UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Chapter 7 |
| Daniel A. Swinehart, | Case No. 18-25585-kmp |
|     Debtor. | |

| | |
|---|---|
| Joseph J. Brisk and | |
| Kathryn M. Brisk, | |
|     Plaintiffs, | |
| v. | Adversary No. 18-2200 |
| Daniel A. Swinehart, | |
|     Defendant. | |

**DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Daniel A. Swinehart, the Debtor in this bankruptcy case, is the sole member of Infinity Custom Builders, LLC d/b/a Infinity Custom Homes ("Infinity"). Joseph and Kathryn Brisk (the "Plaintiffs" or "Brisks") hired Infinity as the general contractor to construct a structure and fixtures on real estate located in Oconomowoc, Wisconsin. The Plaintiffs allege that the Debtor and Infinity failed to pay all subcontractors and suppliers. In response, the subcontractors and suppliers filed liens on the Brisks' property, and the Brisks paid $41,168.85 to get the liens removed. They also paid for the cost of completing the project. The Plaintiffs seek a determination that the debt owed to them is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4), based on fraud or defalcation by the Debtor as a fiduciary under Wisconsin's theft by contractor statute. The Debtor moved for summary judgment. Based on the premise that Infinity spent more money on the Brisk project than it received from the Brisks, the Debtor draws the conclusion that he complied with the relevant Wisconsin statute, and as a matter of law, cannot

1

have committed defalcation. For the reasons that follow, the Court denies the Debtor's Motion for Summary Judgment (the "Motion").

## Statement of Jurisdiction

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and the order of reference from the district court pursuant to 28 U.S.C. § 157(a). *See* Order of Reference (E.D. Wis. July 10, 1984) (available at www.wied.uscourts.gov/local-rules-and-orders). As a proceeding to determine the dischargeability of a debt, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and the Court may enter a final judgment. 28 U.S.C. § 157(b)(1). The Complaint did not contain a statement pursuant to Bankruptcy Rule 7008 that the Plaintiffs do or do not consent to entry of a final order or judgment. The Answer did not contain the similar statement required by Bankruptcy Rule 7012(b). Accordingly, both parties have forfeited their right to withhold consent to the Court's entry of final orders or judgments. Local Rules 7008, 7012.

## Summary Judgment Standard

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. At the summary judgment stage, the role of the court is not to weigh evidence, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether there is a genuine issue of material fact, the Court must construe facts and inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

**Discussion of Law and Resolution of Issues/Analysis**

I.  **There Are Genuine Issues of Material Fact for Trial Regarding Whether the Debtor Committed Fraud or Defalcation While Carrying Out Fiduciary Responsibilities Related to the Trust Funds Held for the Brisk Project.**

The Brisks have asserted the debt is non-dischargeable as debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Brisks bear the burden of establishing this exception to discharge by a preponderance of the evidence. *Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 925 (7th Cir. 2016). The Debtor agrees that in this case, the elements of the § 523(a)(4) exception to discharge are that: "(1) a trust existed, (2) the debtor was a fiduciary of the trust, and (3) the debtor committed fraud or defalcation while carrying out the fiduciary responsibilities associated with the trust." (Debtor's Brief, p. 3) (*citing Building Trades United Pension Tr. Fund v. Mueller (In re Mueller)*, Ch. 7 Case No. 10-23917-svk, Adv. No. 10-2351, 2011 WL 2360122, at *2, 2011 Bankr. LEXIS 2290, at *4 (Bankr. E.D. Wis. June 8, 2011). The Debtor does not dispute that the first two elements are satisfied. (Debtor's Brief, p. 3-4). Instead, the Debtor challenges the existence of the third element under § 523(a)(4), "fraud or defalcation," maintaining that, as a matter of law, the Brisks are unable to prove this element.

The Brisks assert that the Debtor violated Wisconsin's theft by contractor statute and committed defalcation. Wisconsin's theft by contractor statute provides that funds paid by an owner for improvements "constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid. . . ." Wis. Stat. § 779.02(5). Further, "[t]he use of any such moneys by any prime contractor or subcontractor for any other purpose until all

3

claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20." *Id*. If the contractor is a limited liability company, as is the case here, misappropriation of funds is deemed theft by a member responsible for the misappropriation. *Id*.

> A. **There Are Genuine Issues of Material Fact for Trial Related to the Amount Paid by Brisks and the Amount Held in the Trust Fund for the Brisk Project.**

The parties' fact dispute starts at the very beginning with the dollar amounts that each allege were held by Infinity as the general contractor in the "trust fund" for the Brisk project. The Debtor claims that the Brisks paid Infinity $496,000 for the Brisk project. (Swinehart Aff. ¶ 8). The Brisks, on the other hand, allege that the trust fund consists of the amount originally deposited in the escrow account at Associated Bank of $585,000, plus the extra amounts paid directly to Infinity by the Brisks in the amount of $166,563.93, for a total held in trust of $751,562.93.[1] (Brisk Aff. ¶¶ 2-6). The Brisks go on to allege that their direct payments of $166,563.93 were never deposited by Infinity into the Associated Bank escrow account. (*Id*. ¶ 5). The parties in this case cannot even agree as to the amount held by Infinity in the trust fund to be paid out to the subcontractors on the Brisk project. This underlying fact issue forms the basis of many of the fact issues that follow and prevents the Court from finding that there is no genuine dispute as to any material fact related to whether the Debtor misused trust funds for the Brisk project and committed fraud or defalcation under § 523(a)(4).

---

[1] The Court will use the total provided in the Brisk Affidavit, though it is not the sum of the amount the Plaintiffs claim to have deposited in the escrow account ($585,000) and the amount they claim to have paid for extras ($166,563.93).

4

### B. There Are Genuine Issues of Material Fact for Trial Related to the Amount Paid to Subcontractors on the Brisk Project.

The parties' fact dispute continues with a dispute about the amount of money paid by the Debtor to the subcontractors and suppliers on the Brisk project. The Debtor maintains that Infinity received $496,000 from the Brisks, but spent at least $522,140.27 on the Brisk project. (Swinehart Aff. ¶¶ 8-10, Ex. A). The Debtor has attached a Cost Spreadsheet to his Affidavit and asserts that the Cost Spreadsheet details the costs Infinity paid on the Brisk project. (*Id.*, Ex. A). The Brisks, on the other hand, assert that the total of $751,560.93 in trust funds was sufficient to pay all of the subcontractors and suppliers that performed services on the Brisk project, but that total liens of $106,995.85 were filed by various subcontractors and suppliers for nonpayment of services rendered on the Brisk project. (*Id.* ¶¶ 9-10). The Brisks note that they were required to pay $41,168.85 to various subcontractors and suppliers who filed those liens so that the liens would be removed from their property, along with additional costs to complete the project. (*Id.* ¶¶ 12-13). The Brisks go on to claim that while Infinity was the general contractor on the Brisk project, Infinity paid itself through requested draws of $98,000 as the general contractor and that the $98,000 was therefore unavailable to pay the subcontractors and suppliers who provided services on the project. (Brisk Aff. ¶¶ 7-8). The Cost Spreadsheet prepared by the Debtor does not have a line item for the alleged payment that the Debtor made to Infinity as the general contractor on the Brisk project. (Swinehart Aff., Ex. A).

The Debtor has not shown at this time that there are no genuine issues of fact related to how much the Debtor paid to the subcontractors and the suppliers on the Brisk project. There are any number of fact questions about how much was paid to the subcontractors and suppliers in this case. If the Brisks paid $751,562.93, and that was enough to pay all of the subcontractors and suppliers in full, and the Debtor claims that he paid $522,140.27 to the subcontractors and

5

suppliers on the Brisk project, where did the remaining $229,422.66 go? If there were liens of $106,995.85 placed on the project, were those placed because the Debtor ran out of money after paying $522,140.27 to the subcontractors and suppliers? Or were those liens placed because the Debtor used the money from the Brisks on other projects? If Infinity paid itself $98,000 in draws as the general contractor, does that mean that the Debtor actually expended $620,140.27 on the Brisk project and not the $522,140.27 claimed? If the Debtor actually expended $620,140.27 on the Brisk project, where did the remaining $131,422.66 go? There remain fact issues in this case related to whether the Debtor used the funds paid by the Brisks ($496,000 if you believe the Debtor or $751,562.93 if you believe the Brisks) to pay for labor, services, materials, plans and specifications on the Brisk project alone.

There are additional fact questions related to how and when the Debtor prepared the Cost Spreadsheet and whether the Cost Spreadsheet comprehensively lists all of the payments made by the Debtor on the Brisk project. It is unclear to the Court at this time whether the Debtor prepared the Cost Spreadsheet as money was being paid by the Brisks and sent to the subcontractors and suppliers or if he recreated the Cost Spreadsheet for the purposes of supporting his Motion for Summary Judgment. The Cost Spreadsheet does not identify the invoices paid by invoice number nor does it provide copies of the invoices to show that the invoices were for labor and materials on the Brisk project. There has also been no evidence provided that permits the Court to trace the money from the Brisks' trust fund to the payments made to the various subcontractors on the Brisk project. The Debtor's Affidavit fails to conclusively establish how the Debtor spent funds from the Brisks' trust fund. There remain fact issues as to whether the funds paid by the Brisks only went to pay the subcontractors that worked on the Brisk project and not to subcontractors on other jobs, personal expenses of the Debtor, or

6

other corporate expenses of the Debtor. Construing all facts and inferences in a light most favorable to the non-moving party, these genuine disputes of material fact related to how much was paid or not paid to the subcontractors on the Brisk project also preclude the entry of summary judgment in favor of the Debtor.

> C. **There Are Genuine Issues of Material Fact for Trial Related to Whether the Debtor Used All of the Funds That He Received from the Brisks on the Brisk Project.**

The Debtor claims in his briefing that he could not have violated the theft by contractor statute because he used all of the money that he received from the Brisks to pay the subcontractors and suppliers on the Brisk project. There is authority for the proposition that a general contractor who uses all funds received for a project to pay subcontractors and suppliers does not violate the theft by contractor statute simply because those subcontractors and suppliers are not paid in full. *See Capital City Sheet Metal, Inc. v. Voytovich*, 217 Wis. 2d 683, 578 N.W.2d 643 (Ct. App. 1998). In the *Capital City* case, however, unlike this case, there was proof that the general contractor used the funds received from the homeowner "to pay the very people and entities on whose behalf the statute imposes the trust: the subcontractors and the suppliers of labor and materials for the [homeowner's] project." *Id*. at 689. Furthermore, the record in the *Capital City* case did not indicate "that any of the funds [the general contractor] received from [the homeowner] went to anyone else or for any other purpose" and the record "unequivocally" established that the money paid by the homeowner was paid for labor and materials used for the contracted-for improvements. *Id*. at 689-90.

Here, the record does not unequivocally establish the same. As noted above, there remain genuine disputes on material facts related to: the amount paid by the Brisks to Infinity and held in trust for the Brisk project, the amount paid by Infinity to the subcontractors and

7

suppliers on the Brisk project, the amount paid by Infinity to itself as the general contractor on the Brisk project, whether Infinity did in fact pay out more to the subcontractors and suppliers on the Brisk project than it received from the Brisks, and whether Infinity in fact used all of the money that it received from the Brisks to pay the subcontractors and suppliers on the Brisk project. The Debtor's Affidavit fails to conclusively establish how the Debtor spent funds, and as such, there are genuine issues of material fact as to whether the Debtor misused trust funds, violated the theft by contractor statute, and committed fraud or defalcation under § 523(a)(4).

### D. There Are Genuine Issues of Material Fact for Trial Related to Proportionality.

There also remain fact questions at this time about whether the Debtor paid the subcontractors and suppliers on the Brisk project "proportionally." The theft by contractor statute contains a proportionality requirement. *See State v. Keyes*, 2008 WI 54, ¶¶ 27-34, 309 Wis. 2d 516, 531-33, 750 N.W.2d 30, 37-39. Before using trust funds for purposes other than paying for labor, services, materials, plans, and specifications, general contractors are required to "pay trust fund money proportionally to subcontractors in cases of deficiency." *Id*. at ¶ 34. The use of trust fund money by any general contractor for any purpose until all claims have been paid in full or proportionally in cases of deficiency is theft by contractor. *See* Wis. Stat. § 779.02(5); *Keyes*, 2008 WI 54, ¶ 22.

There appears to be a factual dispute at this time as to whether the subcontractors and suppliers on the Brisk project were paid proportionately. The Brisks allege that they paid $751,562.93 for their project, that $751,560.93 of that trust fund amount was sufficient to pay all subcontractors and suppliers on the project, but that liens in the amount of $106,995.85 were filed against their property by the subcontractors and suppliers who went unpaid on the project. If there were liens of $106,995.85 placed on the project, how did the Debtor choose who was

8

getting paid and who was not? Were the payments to the subcontractors and suppliers proportional? The Debtor alleges that he paid $522,140.27 to the subcontractors and suppliers on the Brisk project. If liens in the amount of $106,995.85 were filed against the property by the subcontractors and suppliers who went unpaid on the project, were the subcontractors and suppliers who were allegedly paid $522,140.27 paid proportionally before the funds were used for any other purpose? What services were provided by the Debtor for the $98,000 general contractor fee? If Infinity provided subcontractor services as part of its general contractor fee, did Infinity pay itself its general contractor fee in full, leaving other subcontractors with outstanding claims unpaid, thereby violating the proportionality requirement of the theft by contractor statute and using money for a non-statutory purpose? Summary judgment cannot be entered at this time because there remain fact issues regarding whether the Debtor used money from the Brisks' trust fund for any purpose before all of the subcontractors' and suppliers' claims were paid in full or proportionally in the case of a deficiency.

      **E.**      **There Are Genuine Issues of Material Fact for Trial Regarding the Tracing of Funds Received from the Brisks.**

A representation in the Debtor's own briefing raises an additional fact issue related to whether all of the money received by the Debtor from the Brisks was paid for labor and materials on the Brisk project and not used for other personal or corporate purposes. The Debtor's Brief in support of his Motion for Summary Judgment contains the statement that:

> [w]hile there may be evidence in this case that demonstrates Infinity's bank account balance dropped below the dollar amount Brisk paid before the checks were issued; such evidence, if presented, simply reflects mere negligence by Mr. Swinehart, not something more.

(Debtor's Brief, p. 5). If there is such evidence, then using the funds for some other purpose – whether personal or corporate – could violate the theft by contractor statute and the officers of

9

the corporation could be held personally liable. *See Capital City Sheet Metal, Inc. v. Voytovich*, 217 Wis. 2d 683, 578 N.W.2d 643 (Ct. App. 1998); *Capen Wholesale, Inc. v. Probst*, 180 Wis. 2d 354, 509 N.W.2d 120 (Ct. App. 1993). This is another fact issue for trial.

> **F.  There Are Genuine Issues of Material Fact for Trial Related to the Debtor's State of Mind While Acting in a Fiduciary Capacity.**

The "state of mind" analysis involved in determining whether the Debtor has committed "defalcation while acting in a fiduciary capacity" such that the debt owed to the Brisks is non-dischargeable under 11 U.S.C. § 523(a)(4) also precludes the entry of summary judgment.

After the Supreme Court's decision in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013), a finding that a debtor has violated Wisconsin's theft by contractor statute does not per se lead to a determination that debt is non-dischargeable under § 523(a)(4). *See K&D Masonry LLC v. Vieaux (In re Vieaux)*, Ch. 13 Case No. 12-36663, Adv. No. 13-2196, 2013 WL 5935156, at *2-3, 2013 Bankr. LEXIS 4635, at *5-7 (Bankr. E.D. Wis. Nov. 5, 2013). Rather, even if a debtor has violated the statute, the Court "must make a finding regarding the debtor's state of mind while acting in a fiduciary capacity." *Id*.

"Defalcation" as used in § 523(a)(4) need not involve bad faith, but its "state-of-mind requirement requires at least a subjective, *criminal* level of recklessness." *Jahrling*, 816 F.3d at 925; *see Bullock*, 569 U.S. 267. According to the Supreme Court, defalcation requires an "intentional wrong," and the Court defines this term to include conduct a person knows is improper, but also "reckless conduct of the kind that the criminal law often treats as the equivalent." *Bullock*, 569 U.S. at 274. Following the Model Penal Code definition, an "intentional wrong" includes conduct that takes place when a fiduciary "'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty. . . . That risk 'must be of such a nature and degree that, considering the

10

Case 18-02200-kmp    Doc 13    Filed 10/15/19    Page 10 of 13

nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.'" *Id*. (quoting Model Penal Code § 2.02(2)(c), p. 226 (1985)). As described by the Seventh Circuit Court of Appeals, *Bullock*'s definition "is more perspicuously understood as knowing that there is a risk of serious harm and that it can be averted at reasonable cost, yet failing to act on that knowledge." *Stoughton Lumber Co. v. Sveum*, 787 F.3d 1174, 1177 (7th Cir. 2015). A defendant may have been "playing ostrich—that is, that he suspected that he was violating the law but avoided confirming his suspicion in order to preserve a patina of innocence." *Id*.

Two statements in the Debtor's Affidavit could be construed as an attempt to show that the Debtor did not have knowledge he was violating responsibilities as a trustee under section 779.02(5). He states, "I did not knowingly commit any theft of funds or theft of trust funds on the Brisk project . . ." and "on balance I did not knowingly commit any theft and there is no evidence that any wrongdoing was anything more than simple negligence." (Swinehart Aff. ¶¶ 18, 21). The Court's role on summary judgment "is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Such conclusory statements in affidavit form cannot establish the Debtor's state of mind, as the Court must weigh evidence and judge witness credibility to determine whether it agrees with the portrayal or not.

The Debtor also claims at one point in his briefing that he may have acted with "mere negligence." The Debtor's brief states:

> [w]hile there may be evidence in this case that demonstrates
> Infinity's bank account balance dropped below the dollar amount
> Brisk paid before the checks were issued; such evidence, if

> presented, simply reflects mere negligence by Mr. Swinehart, not
> something more.

(Debtor's Brief, p. 5). Of course, "negligence is not sufficient to show defalcation within the meaning of § 523(a)(4)." *Jahrling*, 816 F.3d at 926. The implication in the Debtor's brief that he used funds from the Brisks for purposes other than their project but only did so "negligently" is a question of fact for trial. Whether the Plaintiffs can establish the required state-of-mind element of § 523(a)(4) (i.e. an "intentional wrong" or "reckless conduct" or a "conscious disregard or willful blindness to a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty" or "a gross deviation from the standard of conduct that a law-abiding person would observe in the Debtor's situation") is certainly an open question for trial.

## Conclusion

When moving for summary judgment, the movant, here the Debtor, has the burden of proving that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. In this case, that requires the Debtor to prove that there is no genuine dispute as to any material fact related to whether the Debtor misused trust funds for the Brisk project and committed fraud or defalcation under § 523(a)(4). As noted above, there remain genuine issues of material fact for trial regarding (1) the amount paid by the Brisks and the amount held in the trust fund for the Brisk project; (2) the amount paid to subcontractors and suppliers on the Brisk project; (3) whether the Debtor used all of the funds that he received from the Brisks on the Brisk project or for other personal or corporate purposes; (4) whether the Debtor paid the subcontractors and suppliers on the Brisk project proportionally; (5) whether payments from the Brisks' trust fund can be traced to the payments made to the subcontractors and suppliers on the Brisk project; and (6) the Debtor's state of mind while acting in a fiduciary capacity. Based upon the evidence before it, this Court cannot say at this time that the money

12

paid by the Brisks was or was not paid for labor and materials on the Brisk project only and not used for other personal or corporate purposes.  Additionally, the Court cannot assess the Debtor's "state of mind" and determine, as a matter of law, whether the Debtor has committed "defalcation while acting in a fiduciary capacity" such that the debt owed to the Brisks is non-dischargeable under 11 U.S.C. § 523(a)(4).  Accordingly,

IT IS THEREFORE ORDERED:  the Debtor's Motion for Summary Judgment is denied.

IT IS FURTHER ORDERED:  the Court will hold a status conference on **October 29, 2019** at **2:00 p.m.** by telephone to schedule a trial and related deadlines in this proceeding.

Dated: October 15, 2019

Katherine Maloney Perhach
United States Bankruptcy Judge

13

Case 18-02200-kmp    Doc 13    Filed 10/15/19    Page 13 of 13